STATE OF CONNECTICUT *v.* BRUCE CONROD
(10879)

STATE OF CONNECTICUT *v.* BRUCE GUILMETTE
(10880)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued November 7, 1985—decision released February 11, 1986

*Jon C. Blue,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant in both cases).

*Michael E. O'Hare,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Carl Schuman,* assistant state's attorney, and *Edward F. Spinella* and *Donald O'Brien,* former assistant state's attorneys, for the appellee (state).

CALLAHAN, J. The defendant was convicted of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3).[1] On April 20, 1981, he was sentenced to consecutive terms of four to eight years on each count, for a total effective sentence of eight to sixteen years imprisonment. The defendant appeals, asserting that the trial court erred in refusing to allow him to testify on redirect examination that he had reviewed and ratified notes made by his attorney. We find no error.

From the evidence adduced at trial the jury could reasonably have found the following facts: On August 7, 1979, the defendant was arrested for two robberies.

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument  . . . ."

The first robbery was committed on June 9, 1979, at approximately 2 p.m., after the defendant entered Irene's Yarn Shop which is located at 560 North Main Street, Bristol. At the time, Irene Derosier, the proprietor, was alone in her store. After the defendant had been in the store for a short period of time, he produced a knife and asked Derosier for her money. She gave him about fifty dollars in cash and he fled. At the time of the robbery, the shop was well lit and the defendant was only a few feet from Derosier. On August 4, 1979, Derosier examined a series of photographs shown to her by the Bristol police and identified the defendant as the man who had robbed her. During the trial, she made an in-court identification of the defendant as the robber.

On June 13, 1979, at approximately 1:15 p.m., the defendant entered the Dairy Farm Store located at 104 Wolcott Street, Bristol. Barbara Huntley was the manager of the store and was working there alone although there were two children in the store when the defendant entered. After the children had left, Huntley asked the defendant if she could help him. The defendant pointed a knife at her and told her to give him the store's money. Huntley opened the cash register and gave him all the five and ten dollar bills that were in the drawer, which amounted to approximately sixty dollars. He then demanded that she give him the twenty dollar bills that were under the tray in the drawer. Huntley said that there were no twenty dollar bills in the drawer and she picked up the tray and threw it at the defendant. The defendant fled and Huntley chased him across the street, but then gave up the chase. Huntley had seen the defendant for the first time the day before the robbery when he entered the store and made a purchase. During the robbery, she had a clear view of the defendant's face. Huntley examined a series of photographs shown to her by the Bristol police

and identified the defendant as the man who had robbed her. She also made an in-court identification of the the defendant during the trial.

The defendant presented an alibi defense. He testified on direct examination that on June 8, 1979, he returned to Bristol, having just been discharged from the army, and that on June 9, 1979, at the time of the yarn shop robbery he was at his mother's home with his mother and sister. He further testified that he had slept until about 2 p.m. on June 13, 1979, the day of the Dairy Farm Store robbery.

On cross-examination, the state's attorney questioned the defendant extensively about his actions on June 9, 1979. He was able to recall the events of that day in great detail. The state's, attorney then asked the defendant for details of his activities for days selected at random. The defendant repeatedly objected to this line of questioning but his objections were overruled. The defendant was unable to recall his activities on those days. On redirect examination the defendant explained that he was able to recall the events of June 9, 1979, because it was his first day home after his having been discharged. He was unable to explain why he remembered the events of June 13, 1979.

On recross-examination the state's attorney asked the defendant if he had ever written down the details of his activities on the dates of the robberies. The defendant responded that he had not. Subsequently, defense counsel, on redirect examination, asked the defendant, "When you talked to the lawyers who represented you, including myself, did we write down things while we were talking with you?" The defendant replied in the affirmative. The state's attorney then made an objection which the trial court apparently sustained. The defendant now argues that the sustaining of this objection constituted reversible error.

The defendant argues that the trial court erred in refusing to allow the defendant to testify, on redirect examination, that his attorney had made interview notes in the defendant's presence, which the defendant had reviewed and ratified. This court has made it clear that a witness is permitted on redirect examination to explain or clarify any relevant matters in his testimony which may have been weakened or obscured by his cross-examination. *State* v. *Graham,* 186 Conn. 437, 448, 441 A.2d 857 (1982). The extent and scope of redirect examination, however, may be limited within the discretion of the trial judge. *State* v. *Reed,* 174 Conn. 287, 301, 386 A.2d 243 (1978).

In order to determine if the trial court properly sustained the state's objection during defense counsel's redirect examination of the defendant, it is necessary to examine the record. During the redirect, immediately preceding the state's objection, defense counsel had asked the defendant, "When you talked to the lawyers who represented you, including myself, did we write down things while we were talking with you?" The defendant responded in the affirmative. The state's attorney then objected. The record discloses that this objection was made while there was no question pending. It is therefore difficult to determine what the trial court sustained an objection to. The previous question had been asked and answered at the time of the state's objection and no request had been made to strike the answer. No other question was asked to which objection was taken. After the state objected, the trial judge, without making a ruling, excused the jury. In their absence, there was a colloquy between defense counsel, the state's attorney, and the court in which the court said that "the witness can testify as to notations he made, but not as to notations that [his attorney] made." Defense counsel argued hypothetically that if he showed the defendant his notes and went over the

notes with him, the defendant should be allowed to testify to that. He did not ask the defendant whether he had, in fact, reviewed any notes of counsel. Obviously, the defendant could not testify as to notes taken by defense counsel unless, at a minimum, there was testimony that he had seen those notes. At no time did defense counsel make an offer of proof as to what had actually occurred. At the end of the colloquy, the trial court sustained the state's objection. It is impossible to ascertain from the record whether the line of questioning which defense counsel apparently wished to pursue was admissible. "The short answer to this claim is that no offer of proof appears in the record as to the . . . content of the testimony the [defendant] sought to introduce. 'Without knowing the answer that might be forthcoming we are unable to rule on this assignment of error.' " *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 267, 413 A.2d 854 (1979), quoting *Johnson* v. *Newell,* 160 Conn. 269, 277, 278 A.2d 776 (1971).

"It is the appellant's burden to ensure that we are provided with an adequate appellate record to support his claim of error." *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.,* 194 Conn. 400, 407, 480 A.2d 552 (1984). The defendant in the present case has not met this burden. Under the circumstances outlined above, if he wished to preserve this claim of error for appellate review, he should have presented an offer of proof. "An offer of proof, properly presented, serves three purposes. First, it should inform the court of the legal theory under which the offered evidence is admissible. Second, it should inform the trial judge of the specific nature of the offered evidence so the court can judge its admissibility. Third, it thereby creates a record adequate for appellate review." *Mad River Orchard, Inc.* v. *Krack Corporation,* 89 Wash. 2d 535, 537, 573 P.2d 796 (1978).

"The significant gap in the record . . . limits our review and presents obstacles to reviewing the defendant's claim of error on this appeal." *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.,* supra. In the absence of a proper offer of proof, this court cannot speculate as to what actually took place at the conference between the defendant and defense counsel or what line of questioning defense counsel intended to follow. We will not base a claim of error on an assumption that the trial court acted incorrectly. Id., 407–408; *Giamattei* v. *DiCerbo,* 135 Conn. 159, 162, 62 A.2d 519 (1948). Without an adequate record to review the ruling of the trial court, this court must assume that the trial court acted properly. *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.,* supra; *Jacobsen* v. *Jacobsen,* supra, 263; *Giamattei* v. *DiCerbo,* supra.

There is no error.

In this opinion the other judges concurred.