PATRICIA BURNS ET AL. *v.* THOMAS M.
HANSON ET AL.
(SC 15962)

Callahan, C. J., and Borden, Berdon, Norcott, Palmer, McDonald and
Peters, Js.

Argued November 3, 1998—officially released August 3, 1999

*Howard K. Goldstein,* pro hac vice, with whom were *Kenneth J. McDonnell* and, on the brief, *Andrew S. Kessler,* pro hac vice, for the appellant (named plaintiff).

*Mark R. Kravitz*, with whom was *Kevin C. Shea*, for the appellees (defendants).

*Opinion*

PETERS, J. The issues in this action for negligence and medical malpractice arise out of the birth of a healthy child to a severely disabled mother, who, in accordance with medical advice, had decided not to have another child. Specifically, we must decide the propriety of a pretrial ruling that struck a count in the named plaintiff's complaint. We also must consider whether jury instructions and evidentiary rulings, during the trial, impaired full jury consideration of her claims for recovery.

The named plaintiff, Patricia Burns (plaintiff), brought this action for negligence and medical malpractice against the defendants, her gynecologist, Thomas M. Hanson, and his practice group, Gynecology and Infertility, P.C.[1] The plaintiff, who suffers from progressive multiple sclerosis, alleged that the defendant, in various respects, had provided her with negligent medical treatment. Among her specific allegations, the plaintiff asserted that the defendant, knowing both of her condition and that it was medically undesirable for her to become pregnant, incorrectly advised her that she was sterile and failed to diagnose her pregnancy after an examination early in her second trimester. In her initial amended complaint, the plaintiff sought damages for, inter alia: (1) her physical injury, including carrying a pregnancy to term, giving birth, and aggravation of

---

[1] The plaintiff sought damages from the defendant Gynecology and Infertility, P.C., only on the ground that the corporation is liable for the negligence of Hanson, its agent and employee. In the absence of a direct claim against the corporation, we will, for the sake of convenience, refer only to Hanson's conduct and refer to him, in the singular, as the defendant.

her multiple sclerosis; (2) her pain and emotional distress; (3) her inability adequately to attend to the parenting of her child; and (4) her costs in caring for the child.[2]

Prior to trial, the trial court, *Stanley, J.*, struck count two of the plaintiff's complaint, which pertained to the defendant's alleged liability for the costs of raising a healthy child. The plaintiff accordingly amended the complaint that went to the jury by deleting that count in its entirety. The trial court, *Arena, J.*, instructed the jury in accordance with Judge Stanley's ruling.

The jury heard testimony relating to the circumstances both of the alleged advice about sterility and the alleged failure to diagnose the plaintiff's pregnancy. Although the defendant conceded that he failed to diagnose the plaintiff's pregnancy, the jury returned a verdict in his favor.[3] The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

## I

## FACTUAL HISTORY

The facts concerning the plaintiff's medical condition are largely undisputed. The plaintiff suffers from a chronic, progressive form of multiple sclerosis. She began experiencing the symptoms of her disease in 1980. At the time of the trial in 1997, her condition had so deteriorated that she was confined to a wheelchair

---

[2] The initial amended complaint also sought to compensate William Burns, the plaintiff's husband, for damages associated with the defendant's alleged negligence and malpractice. The trial court granted the defendant's motion to strike William Burns' claims for relief on the ground that he had not alleged that he had been a patient of the defendant. That ruling, although challenged in the plaintiff's motion to set the verdict aside, has not been contested on appeal.

[3] It also returned a verdict in favor of the corporate codefendant, whose only alleged liability was based on the defendant's acts.

and had only limited use of her arms. Her illness has caused the plaintiff to have blurred vision, ringing in her ears, weakness in her arms, coordination problems in her hands, numbness in her legs, bladder and periodic bowel incontinence, and frequent, severe fatigue. During 1985, she became unable to breathe on her own and had to relearn how to do so. By the time of trial, she was unable to drive, to move up stairs without crawling on all fours, or to leave her house without assistance. The plaintiff relied on a home health aide to assist her with personal care such as bathing, oral hygiene, dressing and eating. The defendant was aware of her condition.

By early 1992, because of the progression of the plaintiff's multiple sclerosis, the plaintiff and her husband decided not to have a second child. Three years earlier, her neurologist in fact had advised her not to have more children, in light of her disabled condition and her difficulty in functioning.

The defendant was the plaintiff's regular gynecologist throughout this time. He prescribed and adjusted the medical devices that she used to prevent pregnancy. Late in 1991, he advised the plaintiff to consider having a tubal ligation "as a pregnancy might further exacerbate her [multiple sclerosis]." In a letter dated one month later, the defendant reiterated that advice and noted that, in his opinion, "it [was] medically contraindicated that [the plaintiff] ever become pregnant . . . [and that] a tubal ligation is indicated."[4]

In May and June, 1992, in an effort to slow the progression of her multiple sclerosis, the plaintiff participated in a radiation treatment program at the Yale School of Medicine (Yale). Because of the risks of radiation in pregnancy, the plaintiff, as a program participant,

---

[4] The plaintiff and her husband claimed that they could not afford to pay for a tubal ligation.

agreed to practice birth control for four years following the treatment.

The Yale program advised participants that they had a 10 percent chance of becoming sterile as a result of the treatment. The plaintiff welcomed the possibility of sterility. The defendant knew of the plaintiff's participation in the radiation therapy program and was aware of the risk of radiation therapy in pregnancy.

After receiving radiation treatment at Yale in May, 1992, the plaintiff ceased having her menstrual periods, which previously had been regular. She consulted the defendant about her amenorrhea. He diagnosed her condition as estrogen deficiency and prescribed treatment accordingly.

The parties differ in their recall about whether, during two separate office visits relating to her amenorrhea, the plaintiff discussed the possibility of her sterility with the defendant. The plaintiff claims that the defendant told her that she had become sterile. The defendant claims that sterility was never discussed.

The plaintiff became pregnant when, thinking that she had become sterile, she and her husband ceased using birth control for the first time in a decade. In April, 1993, when she was fourteen or fifteen weeks pregnant, the plaintiff consulted the defendant in accordance with an appointment schedule that previously had been arranged. The defendant observed breast tenderness, and performed a pelvic examination on the plaintiff, but did not diagnose her pregnancy at that time. According to the defendant, he failed to make an accurate diagnosis not because of negligence on his part but because the plaintiff was taking medication that could cause breast tenderness and had failed to provide him with information about experiencing other signs of early pregnancy, such as weight gain and bloating. Expert testimony on behalf of the plaintiff at trial

indicated that the defendant's care of the plaintiff, both in telling her that she was infertile and in failing to diagnose her pregnancy, fell below the accepted standard of obstetrical and gynecological care.

Two months later, in June, 1993, the plaintiff's internist discovered that the plaintiff was twenty to twenty-one weeks pregnant. The plaintiff did not have an abortion at that time. On October 27, 1993, the plaintiff gave birth to a healthy daughter, whom the plaintiff loves dearly.

From the time of the child's birth, the plaintiff has been unable to drive, clean the house, shop, do laundry, or prepare meals. Owing to her lack of mobility, she is unable to assist her child with basic tasks, such as bathing or preparing for bed. In several instances, she has been unable to remove the child from dangerous situations, such as running into the street. The plaintiff's husband assists in caring for the child, but he works eighty hours a week outside of their home.

The jury returned a verdict for the defendant, upon which the trial court rendered judgment after denying the plaintiff's motion to set the verdict aside. The verdict form stated only: "We, the Jury, find the issues in favor of the Defendants, Thomas M. Hanson, M.D. and Gynecology and Infertility, P.C." This appeal followed.

## II

## APPELLATE CLAIMS

On appeal, the plaintiff argues that the judgment should be reversed because the trial court improperly: (1) in a pretrial ruling, excluded any claim for recovery of the costs of raising a healthy child; (2) in accordance with the pretrial ruling, instructed the jury that the birth of a healthy child does not give rise to compensable injury; (3) excluded, as speculative, testimony from the plaintiff on whether she would have terminated her

pregnancy at fourteen weeks if she had known of it then; (4) instructed the jury that the plaintiff had a duty to mitigate her damages; (5) instructed the jury to deduct, from damages to which the plaintiff might otherwise be entitled, an amount representing the benefits conferred on the plaintiff by having a healthy child; and (6) precluded the plaintiff from offering evidence of economic damages for the period between the child's birth and the time of trial. We agree that the plaintiff is entitled to a new trial. Accordingly, we reverse the judgment of the trial court.

## III

### THE PLAINTIFF'S SUBSTANTIVE LAW CLAIM

The first issue that we address is the pretrial ruling of the trial court, *Stanley, J.*, that Connecticut does not recognize a right to recover damages arising from the birth and rearing of a healthy child, even when the child was born as a result of negligent medical advice and medical care. In the second count of her amended complaint, the plaintiff had sought to recover such damages because of the defendant's alleged negligence in advising her that she had become sterile and in failing to diagnose her pregnancy early in her second trimester. The plaintiff claimed, in count two, that as a consequence of the defendant's alleged negligence, she "gave birth to a daughter," and "[had] expended, and will continue to expend, monies for the care, education, welfare and maintenance of [her] daughter . . . ." The court struck the second count in its entirety. This ruling was restated and broadened in a subsequent jury instruction to the same effect by the trial judge, *Arena, J.*[5] As given, the instruction implied that no recovery

[5] At trial, the court, *Arena, J.*, instructed the jury as follows:

"In general, the birth of a healthy child in and of itself does not give rise to a compensable injury under the law. In addition, the law provides that where the defendant's conduct has caused harm to the plaintiff or to her property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered

of any kind under any circumstances is permitted for the birth of a healthy child.

In deciding to strike count two, and thereby disallowing a claim for damages for raising a healthy child, the trial court, *Stanley, J.*, recognized that he was not writing on a clean slate. In *Ochs* v. *Borrelli*, 187 Conn. 253, 256, 258, 445 A.2d 883 (1982), we concluded, unanimously, that a mother was entitled to recover not only for the expenses associated with the child's disability, a minor orthopedic defect, but also for the ordinary costs of raising a child born as a result of a negligently performed sterilization procedure.

The court, *Stanley, J.*, concluded, for two reasons, that this case was distinguishable from *Ochs*. The court determined that it was significant that: (1) the claim of negligence in *Ochs* concerned a negligent sterilization, rather than negligent advice about sterility and pregnancy; and (2) the child in *Ochs* was not perfectly healthy, while the child in this case is perfectly healthy. The defendant urges us to uphold the court's ruling. We agree with the plaintiff, however, that these distinctions do not undermine the applicability of *Ochs* to the present case.

First, the defendant argues that we should approve the distinction that the court, *Stanley, J.*, made between negligent sterility advice and negligent sterilization procedures. Under the circumstances of this case, we are not persuaded. Such a distinction has no validity in the present case, in light of the plaintiff's all encompassing

---

a mitigation of damages to the extent that you believe this is equitable." The plaintiff excepted to the court's instruction.

The plaintiff filed a motion to set aside the verdict, in which she challenged both Judge Stanley's pretrial ruling and Judge Arena's jury instruction. In its denial of that motion, that trial court, *Arena, J.*, stated that that particular instruction "was also based on the decision by Judge Stanley," and that "the Court believes that also his decision reflected the correct status of the law in Connecticut . . . ."

relationship with the defendant, her gynecologist of long standing, who knew of her medically well-founded wish not to become pregnant.[6] Notably, in *Ochs*, we stated, without limitation, that "the better rule is to allow parents to recover for the expenses of rearing an unplanned child to majority when the child's birth results from negligent medical care." Id., 258.[7]

Second, the defendant argues that the court, *Stanley, J.*, properly distinguished *Ochs* because in that case the child that was born as a result of the defendant's negligence was not perfectly healthy, but suffered from a minor orthopedic defect. This is a mischaracterization of our holding in *Ochs*. That case did not revolve around the child's disability.[8] The costs related to the child's

[6] The defendant also claims that his failure to advise about sterility is not actionable because the plaintiff never asked for such advice. The plaintiff testified to the contrary. A disputed statement of fact is not a basis for distinguishing *Ochs* on a motion to strike. To the extent that the defendant claims that the plaintiff never informed him of her discontinuation of birth control, that omission is consistent with the plaintiff's claim about sterility advice, because if, as she claims, he told her that she was sterile, such discontinuation would be foreseeable.

[7] The defendant argues, on the same basis, that the plaintiff's claim is distinguishable from those decisions of other states in which ordinary child rearing expenses have been awarded. The defendant has offered no persuasive reason for distinguishing between negligence involving medical procedures and negligence involving medical advice. Moreover, the defendant fails to note that numerous other states have permitted recovery where a child was born as a result of *nonprocedural* medical negligence. See, e.g., *Garrison* v. *Foy*, 486 N.E.2d 5, 7 (Ind. App. 1985) (defendant negligently performed postoperative testing and advised plaintiff vasectomy operation successful); *Clapham* v. *Yanga*, 102 Mich. App. 47, 50, 300 N.W.2d 727 (1980), appeal dismissed, 412 Mich. 889, 335 N.W.2d 1 (1982) (physician negligently failed to diagnose pregnancy); *Troppi* v. *Scarf*, 31 Mich. App. 240, 244, 187 N.W.2d 511 (1971) (pharmacist negligently filled birth control prescription with mild tranquilizer); *Jackson* v. *Bumgardner*, 318 N.C. 172, 174, 347 S.E.2d 743 (1986) (physician negligently failed to reinsert intrauterine birth control device after performing ovarian surgery).

[8] The defendant asserts that the mother in *Ochs* underwent the negligently performed sterilization procedure "precisely to avoid the birth of another child with [orthopedic] defects." In fact, our decision in *Ochs* contains no indication of the reasons why the mother in *Ochs* sought the sterilization. The opinion states that, besides having two children born with orthopedic

minor orthopedic defect were not at issue in the *Ochs* appeal.[9] Although the jury had awarded damages to the plaintiff both for special medical care of the child and for the ordinary costs of child rearing, it was only the latter damages that the defendant contested on appeal. Id., 255.

The defendant maintains that the ruling of the court, *Stanley, J.*, was justifiable on another ground to which the court did not allude. According to the defendant, some jurisdictions that allow recovery for the ordinary costs of child rearing have assigned great weight to the plaintiffs' reasons for wanting to prevent pregnancy. These cases apparently have denied recovery of damages for child rearing expenses if the motivating factors were therapeutic or eugenic concerns that did not materialize, rather than economic concerns. According to the defendant, because the plaintiff's decision not to become pregnant again was not based on the unwanted costs of raising another child, the plaintiff should not be permitted to seek recovery of costs that she never sought to avoid.

In our view, the defendant's argument is fundamentally inconsistent with our reasoning in *Ochs*. We declined to carve out any exception, grounded in public policy, to the normal duty of a tortfeasor to assume liability for all the damages that he or she has caused. We held that any such exception would improperly burden the exercise of a constitutionally protected right to employ contraceptive measures to limit the size of one's family. Id., 258. That constitutional right is similarly a part of the background in the present case. Moreover, unlike the cases upon which the defendant relies,

defects, the mother also had a gynecological history of miscarriage and ovarian surgery. *Ochs* v. *Borrelli*, supra, 187 Conn. 254–55.

[9] The total cost of the child's orthopedic treatment was $230; the only remaining treatment required was the use of arch supports in the child's shoes. *Ochs* v. *Borrelli*, supra, 187 Conn. 255 n.2.

the risk that the plaintiff sought to avoid in fact did come to pass in the present case. We are, therefore, not persuaded at this juncture to follow what may be contrary precedents in other state courts.[10]

The defendant also argues that the ruling of the court, *Stanley, J.,* should be upheld because a negligently performed sterilization is different from a negligent failure to diagnose a pregnancy. The defendant argues that other states have not allowed recovery for the ordinary costs of raising a child resulting from a physician's failure to diagnose a pregnancy. See, e.g., *M.A.* v. *United States,* 951 P.2d 851, 854–56 (Alaska 1998). We are not inclined today to decide whether that distinction is persuasive, because, on their facts, those cases are distinguishable from the present one. This is not a case in which the plaintiff has alleged nothing other than the failure to diagnose a pregnancy. Instead, the plaintiff's claim of negligence extends over a course of her treatment, which included the alleged negligent provision of sterility advice followed by the alleged failure to diagnose her pregnancy in the context of a pregnancy that the defendant had counseled the plaintiff to avoid because of her progressive multiple sclerosis.[11]

---

[10] We are, moreover, doubtful of the applicability of those cases in the present circumstances. We doubt that those courts would consider a woman to have improper motivation if, as in this case, she suffers from a seriously debilitating and progressive disease that, as she had been informed by medical specialists, made it inadvisable to become pregnant.

[11] As we noted in *Ochs,* other states have taken a range of positions on whether to permit recovery for the costs of raising a healthy child that is born as a result of a defendant's negligence. A number have decided, as we concluded in *Ochs,* to recognize such recovery offset "by the benefits conferred on the parents by having and raising the child." *Ochs* v. *Borrelli,* supra, 187 Conn. 259; see, e.g., *University of Arizona Health Sciences Center* v. *Superior Court,* 136 Ariz. 579, 581–83, 667 P.2d 1294 (1983); *Morris* v. *Frudenfeld,* 135 Cal. App. 3d 23, 36–37, 185 Cal. Rptr. 76 (1982); *Jones* v. *Malinowski,* 299 Md. 257, 269–70, 473 A.2d 429 (1984); *Burke* v. *Rivo,* 406 Mass. 764, 769, 551 N.E.2d 1 (1990); *Lovelace Medical Center* v. *Mendez,* 111 N.M. 336, 343–44, 805 P.2d 603 (1991); *Zehr* v. *Haugen,* 318 Or. 647, 657, 871 P.2d 1006 (1994); *Marciniak* v. *Lundborg,* 153 Wis. 2d 59, 64, 450

Finally, the defendant argues that we need not address the merits of the reasoning of the court, *Stanley, J.*, because, right or wrong, it is irrelevant to the outcome of this case. In the defendant's view, because the plaintiff relied on the same factual allegations in her original count one and her original count two, she was able to make a full evidentiary presentation to the jury.[12] Further, according to the defendant, the jury's verdict in favor of the defendant demonstrates that these allegations were unproven. In short, the defendant maintains that the plaintiff has no claim to recover any damages, under *Ochs* or any other basis, because she has failed to prove her claim of malpractice. We disagree.

The defendant assumes that, when the trial court gave the instruction that the birth of a healthy child did not give rise to a compensable injury, the jury would have understood that instruction, in context, to concern nothing other than damages.[13] That is not necessarily so.

The trial court explained to the jury that, in order to prevail, the plaintiff had to prove the following four elements of a medical malpractice action: "(1) the existence of a physician/patient relationship at the time of the act or omission complained of; (2) the standard of care required of the defendant physician in his particular specialty; (3) that the physician deviated from the

---

N.W.2d 243 (1990); see also W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 55, p. 372.

The defendant observes, accurately, that other states have taken different positions on the question. That fact alone does not persuade us to reconsider *Ochs*.

[12] At oral argument, the plaintiff conceded that the only evidence that the pretrial ruling precluded her from presenting was evidence of child rearing expenses.

[13] We recognize that a claim for recovery of costs associated with raising a healthy child is a claim that relates to damages. See, e.g., *Hartke* v. *McKelway*, 707 F.2d 1544, 1551-52 (D.C. Cir.), cert. denied, 464 U.S. 983, 104 S. Ct. 425, 78 L. Ed. 2d 360 (1983).

standard of care owed to the plaintiff; and (4) that the deviation from the standard of care was the proximate cause of the plaintiff's harm." The trial court emphasized that the plaintiff had no right to recover damages unless she proved each of the four elements, including causation. Immediately thereafter, albeit under the rubric of damages, the court instructed the jury that "the birth of a healthy child in and of itself does not give rise to a compensable injury under the law." There is a reasonable likelihood that the jury would have related this instruction to the immediately preceding instruction that, in order to establish liability, the plaintiff was required to prove a causal connection between her injury and the defendant's conduct. If so, because the plaintiff's child was born healthy, the jury is likely to have understood the court to have instructed them of an absence of proof of causation between the defendant's alleged negligence and a legally cognizable injury. In that event, the instruction improperly interfered with the jury's fair evaluation of the plaintiff's case with respect to liability.

Accordingly, the ultimate resolution of the present case turns on whether the plaintiff was afforded a fair opportunity to present her substantive claims to the jury. We turn next, therefore, to the plaintiff's claim that the trial court made an improper evidentiary ruling and gave the jury an improper instruction concerning the plaintiff's substantive claim.

## IV

### EVIDENTIARY AND INSTRUCTIONAL CLAIM RELATING TO LIABILITY

The only evidentiary issue that the plaintiff has raised on appeal relates principally to the defendant's conceded failure to diagnose her pregnancy in April, 1993. The court precluded her from testifying about what she would have done had her pregnancy been diagnosed

properly at that time. The trial court subsequently instructed the jury that the plaintiff had the burden of proving that she would have terminated her pregnancy but for the delayed diagnosis.[14] The plaintiff argues that, in combination, these decisions by the trial court made it impossible for her to establish a case for recovery. We agree.

The evidentiary ruling occurred during the direct examination of the plaintiff at trial, when her counsel asked her: "Now, if [the defendant] had discovered in April of 1993 that you were pregnant, what do you believe you would have done?"

The defendant's counsel interposed: "Objection, calls for speculation."

The court inquired: "Doesn't it?"

The plaintiff's counsel then said: "Well, that's fine as long as I'm not held to a burden of having to establish that then."

To this, the court responded, as follows: "Na—no colloquy. Objection is sustained."[15]

## A

Before we reach the merits of the plaintiff's objection to the court's ruling, we first must determine whether it has been appropriately preserved for appellate review. The plaintiff raised her claim in the limited

---

[14] The court's jury charge included instructions on causation. In that context, the court informed the jury: "[The defendant] does not contend that the plaintiff had an obligation to terminate the pregnancy or place the child up for adoption. However, in order to establish that the plaintiff was damaged by [the defendant]'s failure to detect her pregnancy on April of 1993 the plaintiff has the burden of proving but for the delayed diagnosis of pregnancy she would have terminated the pregnancy."

[15] We rely on the colloquy as it is reported in the trial court's decision on the plaintiff's motion to set aside the verdict, rather than as it is reflected in the court reporter's transcript.

colloquy at trial and in her motion to set aside the verdict.

The defendant maintains that the claim has not been preserved properly, because at trial the plaintiff failed to make an offer of proof as to what her testimony would have been. As the defendant observes, a proper offer of proof serves to "inform the court of the legal theory under which the offered evidence is admissible . . . [and] of the specific nature of the offered evidence so the court can judge its admissibility," thereby creating an adequate record for appellate review. *State v. Conrod*, 198 Conn. 592, 597, 504 A.2d 494 (1986). The absence of an offer of proof may create a gap in the record that would invite inappropriate speculation on appeal about the possible substance of the excluded testimony. See, e.g., Id., 598; *State v. Gooch*, 186 Conn. 17, 24, 438 A.2d 867 (1982).

We are not persuaded that an offer of proof was required in this case, because there was no such gap in the plaintiff's case. It is clear from the record what the plaintiff's answer would have been. The contention that the plaintiff had missed an opportunity to exercise her right to terminate her pregnancy was fundamental to the plaintiff's legal theory that the defendant's negligence had caused her harm. The plaintiff's fifth amended complaint (which ultimately went to the jury) alleges: "As a proximate result and direct consequence of [the defendant's] negligence as hereinabove described, [the plaintiff] suffered and will continue to suffer severe physical injuries, including but not limited to: carrying a pregnancy to term [and] giving birth to a child . . . ." Implicit in that claim is the allegation that the plaintiff would not have carried her pregnancy to term had she learned of her condition in April, 1993. The trial court's jury instruction recognized that this allegation was at the core of the plaintiff's complaint against the defendant.

It is, therefore, clear to us, as it was to the parties and to the trial court, that the plaintiff was prepared to answer that she would have aborted her pregnancy in April, 1993. In light of the present record, a specific offer of proof of what the plaintiff's answer would have been is not necessary for us to review the evidentiary ruling or its harmfulness.[16]

### B

The defendant also reminds us that the trial court has broad discretion with respect to a ruling on the admissibility of evidence. That is undoubtedly the law. See, e.g., *Claveloux* v. *Downtown Racquet Club Associates*, 246 Conn. 626, 628, 717 A.2d 1205 (1998); *State* v. *Sullivan*, 244 Conn. 640, 646, 712 A.2d 919 (1998).

Although we rarely find an abuse of discretion in an evidentiary ruling, there are nevertheless cases in which we have ordered a new trial to correct an improper exclusion of relevant evidence. As a general matter, evidence "is admissible if it has a tendency to support a fact relevant to the issues if only in a slight degree." *State* v. *Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987). It is not rendered inadmissible because it is not conclusive. Id.

### C

On the specific issue of evidence that is arguably speculative, we have found, in particular instances, an abuse of the trial court's discretion in excluding that evidence. For example, in *State* v. *Barletta*, 238 Conn. 313, 316, 320–21, 680 A.2d 1284 (1996), we concluded that the trial court improperly had excluded expert testimony regarding the effects of ingesting cocaine on

---

[16] The defendant makes much of the plaintiff's decision, when her pregnancy was properly diagnosed, four weeks later, not to have an abortion at that time. That contention, however, goes to the weight that the jury might have given to her testimony and not to its admissibility.

a person's cognitive abilities. At issue was the reliability of an eyewitness' alleged visual observations. In other cases, however, we have upheld rulings to exclude evidence as too speculative if the record makes it clear that there was no basis for finding that the testimony would bear on relevant facts. In *Heath* v. *Commissioner of Transportation*, 175 Conn. 384, 391–92, 398 A.2d 1192 (1978), we upheld the trial court's determination that a sketch produced by an expert purporting to show the cost of developing a parcel of land was too speculative to warrant admission, because the evidence focused on one particular use of the land, when various generalized industrial uses were possible. See also *Graybill* v. *Plant*, 138 Conn. 397, 404, 85 A.2d 238 (1951) (exclusion of testimony of witness' "impression" concerning salary paid to decedent's secretary, when witness also testified that he did not remember).

In the present case, the plaintiff's testimony as to what she would have done had the defendant advised her that she was pregnant was not speculative but, rather, was based on her personal knowledge. The plaintiff was not coming to the issue afresh on the witness stand. She had personal experience with deciding to terminate a pregnancy, having undergone an abortion many years earlier when she was an unmarried teenager. In accordance with medical advice concerning her progressive multiple sclerosis, the plaintiff and her husband had made the conscious decision not to have another child. The plaintiff's life experiences made her an appropriate witness to inform the jury about her choices. While her answer, had she been permitted to give one, might have been self-serving, it would not have been speculative. As we explained in *State* v. *Barletta*, supra, 238 Conn. 321, "[w]hether the jury would have credited such testimony is not the issue before us; the question, rather, is whether the testimony was reasonably likely to have assisted the jury . . . ." The plaintiff's excluded testimony was the only direct evidence

either party has noted on the question of whether she would have terminated her pregnancy in April, 1993, and it would have assisted the jury in evaluating a necessary part of her claim.

The defendant contends that the trial court's evidentiary ruling did not prevent the plaintiff from offering other testimony about her likely response to an earlier notice of her pregnancy. It is hard to imagine what evidence would have been as probative as her own testimony. We disagree with the defendant's argument that the court's ruling was proper because the plaintiff could or should have sought to introduce relevant circumstantial evidence.

We conclude, therefore, that the plaintiff's testimony was not speculative and would have assisted the jury in evaluating the plaintiff's claim. Accordingly, we conclude that the trial court abused its discretion in excluding that testimony.

Although, standing alone, the trial court's improper ruling might have been harmless, it was not harmless in the present case in light of the charge to the jury. The trial court instructed the jury that "the plaintiff has the burden of proving [that], but for the delayed diagnosis of pregnancy, she would have terminated the pregnancy." The plaintiff tried to present relevant evidence that would have allowed her to sustain her burden of proof on this issue. The parties have pointed to no other directly relevant evidence before the jury. We do not permit a jury to speculate about a matter on which it does not have evidence sufficient for certain knowledge. *Jaramillo* v. *United States*, 357 F. Sup. 172, 175 (S.D.W.V. 1973); see also 2 J. Wigmore, Evidence (4th Ed. 1979) § 661, p. 902. Without the excluded testimony, the jury virtually was obligated to find that the plaintiff had failed to establish her claim. We conclude

that the plaintiff has sustained her burden of establishing that foreclosing her own nonspeculative testimony about her likely conduct affected the verdict of the jury and deprived her of a fair trial. See *State* v. *Barletta*, supra, 238 Conn. 323; *Donch* v. *Kardos*, 149 Conn. 196, 202, 177 A.2d 801 (1962). She is entitled to a new trial.

V

## SCOPE OF NEW TRIAL

The defendant maintains that a new trial, based on a finding that the trial court improperly excluded the plaintiff's testimony, should be limited in scope. Specifically, the defendant contends that the improperly excluded evidence related only to the misdiagnosis of her pregnancy and, therefore, does not affect the finality of the jury's finding against her on her claim of improper sterility advice. We disagree.

The defendant's argument depends on his assertion that the plaintiff pleaded two separate claims in a single count: one pertaining to the defendant's sterility advice; and the other pertaining to the defendant's failure to diagnose a pregnancy.[17] According to the defendant, the

---

[17] The single count pertaining to the defendant's liability in the plaintiff's fifth amended complaint, which ultimately went to the jury, alleges: "24. The negligence and carelessness of [the] defendant . . . consisted, inter alia, of the following:

"a. failing to take proper histories from [the plaintiff] to determine whether she was sterile;

"b. failing to perform appropriate test on [the plaintiff] to determine whether she was sterile;

"c. advising [the plaintiff] that she was sterile;

"d. failing to properly inquire about and inform [the plaintiff] as to her continued need to use birth control, and the risks attendant to their failure to do so;

"e. failing to timely diagnose [the plaintiff's] pregnancy;

"f. failing to take proper histories from [the plaintiff] to determine whether she was pregnant;

"g. failing to perform proper physical examinations on [the plaintiff] to determine whether she was pregnant; and

"h. failing to perform appropriate tests on [the plaintiff] to determine whether she was pregnant."

plaintiff's allegations of negligence should be viewed as separate claims, because they are based on different sets of facts and implicate different rights. The defendant points to the trial court's instructions to the jury that the plaintiff had both a right to employ contraceptive techniques and a right to decide whether to terminate her pregnancy, and that if the defendant had interfered with either right, the defendant would be liable. The defendant asserts further that the present case is analogous to *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 308, 465 A.2d 294 (1983), in which this court concluded that an improper jury instruction pertaining to informed consent necessitated a new trial only on that issue, without requiring relitigation of the jury's finding that the defendant in that case had negligently performed a hospital procedure.

The defendant's arguments are unpersuasive. The plaintiff's claim of harm arises from the alleged negligence of one individual in a single course of extensive treatment resulting in a single set of claimed damages.[18] The plaintiff alleged that the defendant's negligent conduct, both in providing sterility advice and not detecting the pregnancy, caused her to suffer harm including and arising from her unplanned pregnancy. Unlike *Logan*, the issues are conjoint rather than separate. Although the defendant might have preferred to respond to a complaint dividing the plaintiff's allegations into two separate claims, that is not the way in which the plaintiff has presented her case. It is telling, moreover, that the defendant never moved to separate the plaintiff's action into two separate claims.[19]

---

[18] This case, therefore, is distinguishable from those governed by the general verdict rule. As we observed in overruling in part *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 202, 520 A.2d 208 (1987), the general verdict rule does not extend to "elements of a single cause of action . . . ." *Curry* v. *Burns*, 225 Conn. 782, 792, 626 A.2d 719 (1993).

[19] The defendant did not, at trial, file any motion to revise the plaintiff's complaint. See Practice Book § 10-35.

We conclude, therefore, that, on retrial, the plaintiff may present evidence in support of all aspects of liability that were included in her initial amended complaint. Because of our reinstatement of count two of that complaint, the plaintiff also will be entitled to introduce evidence about the costs of rearing a healthy child.

## VI

### JURY INSTRUCTIONS ON DAMAGES

Because of our conclusion that the plaintiff has established her right to a retrial on all the issues that she raised in her original amended complaint, it is proper for us to give guidance on issues that are likely to recur on retrial.[20] See, e.g., Abington Ltd. Partnership v. Heublein, 246 Conn. 815, 827, 717 A.2d 1232 (1998). The plaintiff challenges the trial court's instructions to the jury with respect to determining the amount of damages. Specifically, the plaintiff asserts that the court improperly instructed the jury, in evaluating any damages to be awarded, to take into account: (1) the plaintiff's duty to mitigate her damages; (2) the benefits conferred on the plaintiff by having her child; and (3) evidence of only future damages incurred from the time of trial.

### A

The trial court gave the jury a general instruction that the plaintiff had a duty to mitigate her damages, and that if she had failed to fulfill that duty her damages should be decreased accordingly. The trial court instructed the jury: "In addition, in assessing the amount of damages resulting from the defendant's negligence you should keep in mind that a plaintiff has a duty to mitigate or minimize her damage under the law. In

---

[20] In the procedural posture in which we address these claims of instructional error, it does not matter that the claims may not have been preserved fully at trial.

particular, one who has been injured by the negligence of another must use reasonable care to minimize the resulting losses and damages caused thereby and to prevent any aggravation or increase of the injuries. The rule is one of good faith and reasonable conduct and a requirement is met when the plaintiff does what a reasonably prudent person would be expected to do under the same circumstances. If you should find that the plaintiff did not act in good faith and did not resort to such means and adopt such methods as were reasonably within her reach to make her damages as small as possible then you are to decrease the damages which you would otherwise . . . award her by such a sum as you think fairly measures the amount by which her damage has been increased as a result of her failure to mitigate or minimize her damages."

The plaintiff argues that an instruction on mitigation was inappropriate in the present case. Her claim, throughout, has been that the defendant's failure, in April, 1993, to diagnose her pregnancy deprived her of the choice to terminate her pregnancy then. The instruction implied that when her pregnancy belatedly was discovered, she then was obligated to recognize that her failure to terminate the pregnancy might diminish her ability to recover damages from the defendant. The trial court specifically instructed the jury that: "[The defendant] does not contend that the plaintiff had an obligation to terminate the pregnancy or place the child up for adoption."

The defendant suggests that the general mitigation charge was proper because it could have referred to the reasonableness of future child-care expenses for which the plaintiff sought recovery. That issue, however, is more a factual question of the necessity of future services rather than a question of damages already incurred that the plaintiff should have mitigated.

In the circumstances of a complaint seeking damages for the costs associated with an unplanned pregnancy and birth, it is not apparent what mitigating steps, other than abortion or adoption, the plaintiff could have taken. A general charge on mitigation is, therefore, not likely to provide helpful guidance to the jury.

B

In another instruction to the jury, the trial court directed the jury, in assessing an award for damages, to consider the benefits conferred on the plaintiff by the birth of her healthy daughter. The court instructed: "[A]ny damages which you award to [the plaintiff] for both future economic damages and past and future noneconomic damages may be reduced by the value of the benefits conferred on her by having and raising the child. Such benefits may include the satisfaction, the fun, the joy, the companionship, and the life which [the plaintiff] has had and will have rearing her child."

The language of the instruction was not improper and the plaintiff makes no such argument. See *Ochs* v. *Borrelli,* supra, 187 Conn. 259. She claims that the instruction was improper in context, because she was precluded at trial from pursuing her claim for the ordinary costs of childrearing. This issue is not likely to recur in the same manner at retrial because the plaintiff will now have the right to pursue that claim. The denial of that right was, presumably, at the core of the plaintiff's objection to the jury instruction.

C

Finally, the plaintiff argues that the trial court improperly precluded the jury from awarding her any damages for the period beginning with the birth of the child and ending with the commencement of trial. This is one of the issues that she raised, without elaboration, at trial in her motion to set aside the jury verdict.

The plaintiff claims that the trial court improperly failed to instruct the jury that it could award past economic damages to the plaintiff. The plaintiff objects to the portion of the jury charge that stated: "In a personal injury action such as this, there are two broad categories of damages. First are what are called economic damages or out of pocket expenses incurred by the injured party. . . . In your deliberations on the issue of damages, first you must determine the amount of the plaintiff's damages for future economic damages. Future economic damages means compensation for actual pecuniary losses that will be—[or] for pecuniary expenses that will be incurred by the plaintiff in the future, including reasonable and necessary rehabilitative services and custodial care. . . .

"The plaintiff is entitled to recover that amount of money which will in the future allow her to purchase services to help her to care for [her child] until she reaches the age of eighteen. These services may include ones which assist [the plaintiff] by helping her conserve her limited energy levels, if you find that it is reasonably necessary for her to do so and those which are involved with caring for [the child] [her]self. You have heard testimony . . . that the plaintiff will require services on an on-going basis until [the child] reaches age eighteen."

The plaintiff argues that the court's charge improperly precluded the jury from considering past economic damages associated with the costs of raising the child from the time of birth. We agree that, on retrial, the instruction on damages should reflect the scope of the plaintiff's cause of action as we have determined it to be.

The judgment is reversed and the case is remanded for a new trial.

In this opinion CALLAHAN, C. J., and BORDEN, BERDON, NORCOTT and PALMER, Js., concurred.

MCDONALD, J., dissenting. The majority orders a new trial because the plaintiff was prevented from testifying about what she believes she would have done if she had been told of her pregnancy six weeks before she actually learned of it. There was evidence that the defendant did not uncover the plaintiff's condition upon examination in April, 1993, when the plaintiff was, in fact, fifteen or sixteen weeks pregnant, and that the plaintiff was first told of her pregnancy in June, 1993, by another doctor. The plaintiff testified that she then decided to carry her child, Molly, to term because an ultrasound examination revealed a baby with a perfectly closed spinal column, ten fingers and ten toes. There was no evidence, however, establishing whether an examination six weeks earlier would have revealed the same condition. Testimony concerning what the plaintiff would have done, therefore, would have been patently speculative, calling for an opinion based upon unknown, hypothetical circumstances. The plaintiff has never disputed that this question called for speculation. I would hold that the trial court properly barred the plaintiff from answering this question.

"Under the Federal Rules of Evidence, speculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible." *Washington* v. *Dept. of Transportation*, 8 F.3d 296, 300 (5th Cir. 1993). In *Washington*, the court upheld the trial court's exclusion of the testimony of the plaintiff, a lay witness, "as to what he *would have done* had he seen the warning label [on a vacuum because] such testimony would not have been based upon [the plaintiff's] perception, but upon his self-serving speculation . . . ." (Emphasis in original.) Id. "Rule 701 [of the Federal Rules of Evidence] limits opinion testimony of a lay witness allowing it only when it is rationally based on the perception of the witness." (Internal quotation marks omitted.)

*Kloepfer* v. *Honda Motor Co., Ltd.*, 898 F.2d 1452, 1459 (10th Cir. 1990), quoting *Messenger* v. *Bucyrus-Erie Co.*, 507 F. Sup. 41, 43 (W.D. Pa. 1980), aff'd, 672 F.2d 903 (3d Cir. 1981), cert. denied, 455 U.S. 944, 102 S. Ct. 1441, 71 L. Ed. 2d 656 (1982). In *Kloepfer*, the Tenth Circuit Court of Appeals found that the testimony of the plaintiff, a lay witness, offered on whether she would have obeyed a "proper" all-terrain vehicle warning, "was not based on any of [her] 'perceptions' nor was it helpful to a clear understanding of [her] testimony— Even expert testimony may not be admitted into evidence if the opinion is based on mere conjecture." (Internal quotation marks omitted.) *Kloepfer* v. *Honda Motor Co., Ltd.*, supra, 1459, quoting *Messenger* v. *Bucyrus-Erie Co.*, supra, 43. The court in *Kloepfer* agreed with the defendant "that the [trial] court was well within its discretion in refusing to allow [the plaintiff] to make speculative and self-serving statements to the effect that had a different warning been on the vehicle, she would not have allowed her six-year-old son to ride it." *Kloepfer* v. *Honda Motor Co., Ltd.*, supra, 1459.

In this case, when the trial court asked the plaintiff's counsel whether the question would call for speculation, counsel did not dispute that it would. The plaintiff, in her brief submitted to this court, does not deny that the question would have called for speculation. Rather, the plaintiff now argues that, because of necessity, she should have been allowed to testify about what she believes she would have done had she learned of her pregnancy in April. The plaintiff claims that the trial court's ruling as to that question took from her the only means of proving that the defendant's alleged negligence, including his failure to diagnose the plaintiff's pregnancy in April, caused her to forgo an abortion at that time, resulting in the birth of Molly. The plaintiff did not distinctly raise this claim in the trial court and

it should not be considered on appeal to this court.[1] Practice Book § 60-5; see, e.g., *State* v. *Baldwin*, 224 Conn. 347, 367, 618 A.2d 513 (1993); *Statewide Grievance Committee* v. *Friedland*, 222 Conn. 131, 146–47, 609 A.2d 645 (1992); *Commission on Hospitals & Health Care* v. *Lakoff*, 214 Conn. 321, 335, 572 A.2d 316 (1990); *Kolenberg* v. *Board of Education*, 206 Conn. 113, 121, 536 A.2d 577, cert. denied, 487 U.S. 1236, 108 S. Ct. 2903, 101 L. Ed. 2d 935 (1988); *Persico* v. *Maher*, 191 Conn. 384, 403, 465 A.2d 308 (1983); *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles*, 176 Conn. 11, 16, 404 A.2d 864 (1978); *Bigionti* v. *Argraves*, 152 Conn. 700, 701, 204 A.2d 408 (1964).

Furthermore, the plaintiff made no offer of proof as to what her answer would have been. The plaintiff would have us assume that her answer would have been that she would have had an abortion. Whether the plaintiff had any then existing belief about what she would have done and what that action would have been is, however, entirely unknown based on the record. Any prejudice to the plaintiff is, therefore, a matter of speculation. "It is the appellant's burden to ensure that we are provided with an adequate appellate record to

[1] The objection the plaintiff raised at trial was that she believed the trial court had relieved her of the burden of presenting proof as to what she would have done had she learned of the pregnancy in April. At trial, the plaintiff's counsel asked the plaintiff the following question: "Now, if [the defendant] had told you, had discovered in April of 1993, that you were pregnant, what do you believe you would have done?" The defendant objected to the question as calling for speculation. The court then asked the plaintiff's counsel: "Doesn't it?" The plaintiff's counsel replied: "Well that's fine. As long as I'm not held to a burden of having to establish that then . . . ." The court interrupted to state: "Nah. No colloquy. Objection is sustained."

The plaintiff argued in her motion to set the verdict aside that she no longer carried the burden of proving what she would have done had she known she was pregnant in April. The plaintiff, thus, never distinctly argued that the court took from her the only means of proving what she would have done.

support [her] claim of error. *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.*, 194 Conn. 400, 407, 480 A.2d 552 (1984). . . . Under the circumstances outlined above, if [the plaintiff] wished to preserve this claim of error for appellate review, [s]he should have presented an offer of proof. . . .

"The significant gap in the record . . . limits our review and presents obstacles to reviewing the [plaintiff's] claim of error on this appeal. . . . We will not base a claim of error on an assumption that the trial court acted incorrectly. . . . Without an adequate record to review the ruling of the trial court, this court must assume that the trial court acted properly." (Citations omitted; internal quotation marks omitted.) *State* v. *Conrad*, 198 Conn. 592, 597–98, 504 A.2d 494 (1986).

I, therefore, would conclude that a new trial is not required.

I also do not agree with the majority's extension of *Ochs* v. *Borelli*, 187 Conn. 253, 445 A.2d 883 (1982), to provide damages to parents for the birth and raising of a perfectly healthy child and, by implication, for the lost opportunity to have an abortion as a result of a defendant's malpractice. The allowance of such damages is a matter of public policy more properly within the power of the legislature. See *In re Baby Z.*, 247 Conn. 474, 533, 724 A.2d 1035 (1999) (*McDonald, J.,* concurring); see also *Hickman* v. *Group Health Plan*, 396 N.W. 2d 10, 15 (Minn. 1986) (upholding Minnesota legislation prohibiting wrongful birth suits).

Since the majority undertakes to establish public policy, I believe it should be sound public policy. The jury properly was given the opportunity to award damages to the plaintiff as a severely ill mother for her having to carry and raise Molly. The majority now holds that a perfectly healthy parent may recover damages for the costs of raising a normal, healthy child. This holding is

neither necessary to the resolution of this case nor acceptable law. A substantial majority (thirty) of state courts has rejected an award of such damages. E.g., *Boone* v. *Mullendore*, 416 So. 2d 718, 721 (Ala. 1982); *Wilbur* v. *Kerr*, 275 Ark. 239, 244, 628 S.W.2d 568 (1982); *Coleman* v. *Garrison*, 349 A.2d 8, 11–12 (Del. 1975); *Flowers* v. *District of Columbia*, 478 A.2d 1073, 1077–78 (D.C. App. 1984); *Fassoulas* v. *Ramey*, 450 So. 2d 822, 823–24 (Fla. 1984); *Fulton-DeKalb Hospital Authority* v. *Graves*, 252 Ga. 441, 444, 314 S.E.2d 653 (1984); *Cockrum* v. *Baumgartner*, 95 Ill. 2d 193, 200, 447 N.E.2d 385, 69 Ill. Dec. 168, cert. denied sub nom. *Raja* v. *Michael Reese Hospital*, 464 U.S. 846, 104 S. Ct. 149, 78 L. Ed. 2d 139 (1983); *Garrison* v. *Foy*, 486 N.E.2d 5, 9 (Ind. App. 1985); *Nanke* v. *Napier*, 346 N.W.2d 520, 522 (Iowa 1984); *Byrd* v. *Wesley Medical Center*, 237 Kan. 215, 225, 699 P.2d 459 (1985); *Schork* v. *Huber*, 648 S.W.2d 861, 863 (Ky. 1983); *Pitre* v. *Opelousas General Hospital*, 530 So. 2d 1151, 1162 (La. 1988); *Macomber* v. *Dillman*, 505 A.2d 810, 813 (Me. 1986); *Hitzemann* v. *Adam*, 246 Neb. 201, 207, 518 N.W.2d 102 (1994); *Szekeres* v. *Robinson*, 102 Nev. 93, 95, 715 P.2d 1076 (1986); *Kingsbury* v. *Smith*, 122 N.H. 237, 242–43, 442 A.2d 1003 (1982); *P.* v. *Portadin*, 179 N.J. Super. 465, 471, 432 A.2d 556 (1981); *O'Toole* v. *Greenberg*, 64 N.Y.2d 427, 432, 477 N.E.2d 445, 488 N.Y.S.2d 143 (1985); *Jackson* v. *Bumgardner*, 318 N.C. 172, 182, 347 S.E.2d 743 (1986); *Johnson* v. *University Hospitals of Cleveland*, 44 Ohio St. 3d 49, 58, 540 N.E.2d 1370 (1989); *Morris* v. *Sanchez*, 746 P.2d 184, 188 (Okla. 1987); *Mason* v. *Western Pennsylvania Hospital*, 499 Pa. 484, 487, 453 A.2d 974 (1982); *Smith* v. *Gore*, 728 S.W.2d 738, 751 (Tenn. 1987); *Terrell* v. *Garcia*, 496 S.W.2d 124, 125, 128 (Tex. Civ. App. 1973, writ ref'd n.r.e.), cert. denied, 415 U.S. 927, 94 S. Ct. 1434, 39 L. Ed. 2d 484 (1974); *C.S.* v. *Nielson*, 767 P.2d 504, 516 (Utah 1988); *Miller* v. *Johnson*, 231 Va. 177, 186, 343 S.E.2d 301 (1986);

*McKernan* v. *Aasheim*, 102 Wash. 2d 411, 419–21, 687 P.2d 850 (1984); *James G.* v. *Caserta*, 332 S.E.2d 872, 878 (W. Va. 1985); *Rieck* v. *Medical Protective Co.*, 64 Wis. 2d 514, 518–20, 219 N.W.2d 242 (1974); *Beardsley* v. *Wierdsma*, 650 P.2d 288, 292–93 (Wyo. 1982). The rationale of these decisions is that these damages are based on an uncertain, speculative, unrealistic and intolerable formula. This case illustrates the soundness of these decisions. There is only one plaintiff, Molly's mother, yet both the plaintiff and Molly's father are responsible for her support and upbringing. The formula would require computing what contribution, in economic terms, could be expected of the plaintiff and what benefit she could expect to receive from Molly in the future in view of the plaintiff's unfortunate illness. Uncertainty and speculative factors are inherent in the formula and it is intolerable. As Justice Francis P. O'Connor stated in his dissent in *Burke* v. *Rivo*, 406 Mass. 764, 551 N.E.2d 1 (1990): "The inquiry would be intolerable because it would require a determination of whether the child represents a [net] loss to his or her parents." Id., 774 (O'Connor, J., dissenting). That the child represents a net loss is the measure of damages that this court approved in *Ochs*.

The adverse effect on the child learning of a claim. that she represented a net loss to her parent and that, perhaps, she would have been aborted were it not for the defendant's negligence surely should be avoided as a matter of "humane and common sense" public policy. *Kingsbury* v. *Smith*, supra, 122 N.H. 243.

Accordingly, I respectfully dissent.