JANET DEMARKEY ET AL. *v.* BRIAN FRATTURO
ET AL.
(AC 23336)

Bishop, West and McLachlan, Js.

Argued September 16—officially released December 30, 2003

*Daniel A. Benjamin*, for the appellants (plaintiffs).

*Robert W. Lotty*, for the appellee (defendant Gertrude Rivas).

*Opinion*

BISHOP, J. Christopher DeMarkey[1] appeals from the judgment of the trial court rendered after the jury's verdict in favor of the defendant Gertrude Rivas.[2] The plaintiff makes the following claims on appeal: (1) the trial court improperly allowed the admission of hearsay evidence; and (2) the court improperly charged the jury

---

[1] Janet DeMarkey and Frank DeMarkey instituted the action individually on behalf of their minor child, Christopher DeMarkey. Once Christopher DeMarkey reached the age of majority, the parents amended their complaint to include him as a plaintiff. Although the parents, too, have appealed from the judgment of the trial court, in this opinion we refer to Christopher DeMarkey as the plaintiff.

[2] Also named as defendants were Brian Fratturo and his father, Harry Fratturo; Thomas Marino, Jr., and his father, Thomas James Marino; Frank D'Acunto, Jr., and his father, Frank D'Acunto, Sr.; Austin Lewis and his father, Melvin Lewis; and Shane Dixon and his grandmother, Bessie Williams. Prior to trial, a default was entered against Thomas Marino, Jr., and the action was withdrawn as against the Fratturos, the D'Acuntos, the Lewises, Thomas James Marino, Dixon and Williams after they reached settlements with the plaintiff. Thus, the only remaining defendants at trial were Rivas and Thomas Marino, Jr. Because Marino's liability was not an issue in this appeal, we refer to Rivas as the defendant throughout this opinion.

on apportionment of liability. We disagree and affirm the judgment of the trial court.

The plaintiff brought this action to recover for personal injuries sustained in a collision allegedly resulting from the defendant's negligent operation of a motor vehicle. The defendant denied having been negligent and raised the plaintiff's contributory negligence as a special defense. After trial, judgment was rendered in favor of the defendant in accordance with the jury verdict.

In reaching its verdict, the jury reasonably could have found the following facts. On October 10, 1997, at approximately 11:30 p.m., the defendant was driving northbound on Hope Street in Stamford. At the same time, the plaintiff, then fifteen years old, also was running in the direction of Hope Street as he was being chased by three young men, one of whom originally was a defendant in this action.[3] In an effort to flee those individuals, the plaintiff ran into the street where he was struck by the defendant's vehicle. As a result, he sustained permanent injuries.

Officers Michael Mann and Joanne Anzenberger of the Stamford police department arrived at the scene shortly after the accident. They immediately began their investigation of the collision and the events leading to it. Mann primarily focused on the collision while Anzenberger concentrated on the chase. Pursuant to the investigation, Mann and Anzenberger prepared reports that consisted of, inter alia, statements from witnesses regarding the incident as well as diagrams depicting the events leading to the collision.

---

[3] The events leading to the chase were in dispute. What was not in dispute, however, was that prior to the chase, the plaintiff and the defendant Brian Fratturo had been drinking beer on the grounds of the Springdale School. At approximately 11:30 p.m., a group of young men arrived, most of whom later were named as defendants in this action. A conflict ultimately ensued, causing the plaintiff to run away as three young men chased him.

A significant issue at trial was whether the plaintiff had run directly into the path of the defendant's vehicle from the school driveway or whether he had run along the sidewalk prior to crossing into the travel portion of the street and into the vehicle's path. Both Mann and Anzenberger testified on that issue, as did the defendant, the plaintiff, and the various witnesses to the collision and the events leading to it. At the conclusion of the trial, the court gave the jury written interrogatories that had been agreed to by all the parties. The jury ultimately returned a verdict in favor of the defendant and submitted those completed interrogatories to the court.[4] This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that it was improper for the court to admit hearsay testimony regarding the path along which he was running prior to being struck by the defendant's vehicle. We agree, but conclude that the admission of the evidence was harmless.

The following additional facts are relevant to our discussion of the plaintiff's claim. On cross-examination, the defendant's counsel requested that Mann read from his police report a statement obtained during an interview with three witnesses, two of whom had been defendants in the action.[5] The requested statement was

---

[4] As to the apportionment of liability, the jury found the following:
"Gertrude Rivas: Zero percent.
"Brian Fratturo: 30 percent.
"Austin Lewis: 12 and one-half percent.
"Shane Dixon: 12 and one-half percent.
"Frank D'Acunto: 12 and one-half percent.
"Thomas Marino: 12 and one-half percent.
"Christopher DeMarkey: 20 percent.
"Total: 100 percent."

[5] The three individuals interviewed were Shane Dixon, Thomas Marino, Jr., and Richard Robinson. Of the three, only Dixon and Marino were named as defendants in this action. See footnote 2.

that "Chris DeMarkey had run along the side of the school, continuing to run straight out onto Hope Street, and was struck at the entrance to the lot, southern entrance." Before Mann read that excerpt, however, the plaintiff's counsel objected to the statement on the ground that it was inadmissible hearsay. The defendant's counsel argued that the statement was not hearsay, as it was the product of Mann's contemporaneous interview of three people, two of whom had been parties to the litigation.[6] The court overruled the objection and admitted the statement into evidence.[7] With those additional facts, we now turn to the plaintiff's claim.

"It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and [those] rulings will not be disturbed on appellate review absent [an] abuse of that discretion." (Internal quotation marks omitted.) *Hartford Housing Authority* v. *DeLeon*, 79 Conn. App. 300, 306, 830 A.2d 298 (2003).

An out-of-court statement used to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception applies. *State* v. *Stepney*, 191 Conn. 233, 249–50, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

---

[6] To be clear, although the defendant does not explicitly make the argument, it appears from the record that he essentially asserted that the statement was admissible pursuant to the exception to the hearsay rule for admissions because the court could infer from the police report that the statement was likely made by either of the two parties to the litigation.

[7] The court stated the following outside the presence of the jury: "I and the Appellate Court have a difference of opinion as to what constitutes hearsay. I will, as I always, report the English rule, and the civil cases are very simple; to the effect that it can be if it's hearsay, the judge will then rule or indicate to the jurors that it is hearsay, and they should treat it or what weight they wish to give it. . . . So, my position as the trial judge here, I'll exercise my discretion. I will allow the statement to come before the jury; it can be read. I will caution the jury that it might contain some hearsay. And they can show whatever weight they wish to give to the statement."

Police reports are normally admissible under the business records exception to the hearsay rule.[8] *Paquette* v. *Hadley*, 45 Conn. App. 577, 581, 697 A.2d 691 (1997). Statements of witnesses repeated in those reports, however, are not generally admissible.[9] Id. Nevertheless, such statements may still avoid prohibition by falling within the admissions exception to the hearsay rule. Id. Pursuant to that exception, the words of a party opponent are generally admissible against him or her. *State* v. *Markeveys*, 56 Conn. App. 716, 719, 745 A.2d 212, cert. denied, 252 Conn. 952, 749 A.2d 1203 (2000).

In the present case, the record does not support the defendant's contention that the hearsay statement was admissible as an admission. The declaration does not fall within that exception because the declarant was unidentifiable. To fall within that exception, one must be able to identify the declarant clearly as a party to the litigation. See *Kelly* v. *Sheehan*, 158 Conn. 281, 284–86, 259 A.2d 605 (1969) (holding that hearsay declaration found within hospital record inadmissible as admission because record did not clearly reflect that party had made statement). Here, the record reflects Mann's inability to identify the source of the declara-

[8] The business records exception is codified in General Statutes § 52-180, which provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter." See also Conn. Code Evid. § 8-4.

[9] Statements of witnesses contained in a police report add another level of hearsay, as they are not based on the entrant's personal knowledge. As such, some exception to the hearsay rule must be found to justify their admission. See *Hutchinson* v. *Plante*, 175 Conn. 1, 5, 392 A.2d 488 (1978) (holding that portions of police officer's report containing statements made to him by witnesses to accident were not admissible under statute like General Statutes § 52-180 because witnesses did not have business duty to make statements).

tion. Thus, it is unclear whether the statement was made by one or both of the defendants who were interviewed by Mann or by the third party who was not a defendant.

We therefore conclude that the testimony at issue was hearsay and, thus, was admitted improperly. Once introduced, it should have been stricken from the record and the jury told specifically to ignore it. Yet, troubling though the admission of the testimony is, we think that, viewed in the context of the entire record, the incorrect ruling was benign.

"[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful." *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990). The harmless error standard in a civil case is whether the improper ruling " 'would likely affect the result' " of the case. Id. Because that determination is context specific, we can sustain the verdict in this case only if we can say with fair assurance, after review of the whole record, that the admission of Mann's testimony did not likely affect the jury's ultimate decision.

Upon review, the record reveals that the substance of the improperly admitted hearsay statement merely was cumulative of other validly admitted evidence. See id., 155 (if improperly admitted hearsay evidence merely is cumulative of other validly admitted evidence, its admission does not constitute reversible error). In the present case, the jury had before it a diagram prepared by Anzenberger, depicting the plaintiff's path before he was struck by the defendant's vehicle. The markings on the diagram indicated that it was prepared according to information provided by Shane Dixon and Thomas Marino, Jr., who also were defendants. In addition, the jury was presented with two other diagrams depicting Mann's impressions of the plaintiff's path before he was struck by the defendant's vehicle. Each of the three

diagrams was admitted without objection and indicated that the plaintiff had run directly into the street immediately prior to being struck by the defendant's vehicle. Thus, the erroneously admitted hearsay testimony that "Chris DeMarkey . . . [ran] straight out onto Hope Street" clearly was cumulative of the diagram evidence. Moreover, there was nothing so inflammatory about this evidence that its admission created a risk of distorting the jury's perception of the remaining evidence. See *Swenson* v. *Sawoska*, supra, 215 Conn. 153. Furthermore, there was supplementary evidence in support of the defendant's verdict;[10] the hearsay testimony merely was one isolated piece of evidence in the context of a five day trial.

Consequently, despite the improper admission of the statement from the police report, in light of all the properly admitted evidence at trial, we do not believe that there was any likelihood that the admission of the hearsay evidence influenced the judgment of the jury. We therefore conclude that the improper admission was harmless and, as a consequence, that the plaintiff's assignment of error is unavailing.

## II

The plaintiff's second claim is that the court improperly charged the jury regarding apportionment of liability. It is the plaintiff's position that the court's charge on apportionment contained errors of law and failed to guide the jury sufficiently in reaching a proper verdict. We do not agree.

The plaintiff asserts two arguments in support of his claim. We will analyze each of those arguments in turn.

---

[10] For example, properly admitted evidence of the defendant's attentiveness to her driving, that she was traveling at a low rate of speed, the lack of light in the area and that trespassers were not allowed on the school grounds at the time of the accident all was before the jury.

## A

The plaintiff argues that the court's charge regarding proximate cause as it related to the apportionment of negligence improperly permitted the jury to consider the entire universe of negligent persons in determining the percentage of the defendant's liability, rather than limiting that universe to parties and those persons with whom the plaintiff had reached settlements in the action. According to the plaintiff, the instruction misguided the jury to include the negligence of a nonparty within its calculus of liability, which nullified the percentage of the defendant's responsibility for causing the plaintiff's injuries. To resolve that claim, we examine both the jury charge requested by the plaintiff and the actual charge given by the court.

The plaintiff requested, in pertinent part, that the court charge the jury per General Statutes § 52-572h (f), which provides in relevant part that "[t]he jury . . . shall specify . . . (4) the percentage of negligence that proximately caused the injury . . . in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons . . . and . . . (5) the percentage of such negligence attributable to the [plaintiff]." The plaintiff also requested that the court instruct the jury to consider only whether parties and settled persons were negligent and, if so, whether such negligence proximately caused the damage to the plaintiff.

The plaintiff contends, however, that the court failed to charge the jury as requested. According to the plaintiff, the court's only reference to proximate cause as it related to apportionment was the following instruction: "There are situations that [the plaintiff] can only recover if there is a proximate cause. But in this case, it's the proximate causation of negligence of either the defen-

dant driver, the pedestrian, [the defendant Brian Frat-turo] or anyone else. So, proximate cause can be—and for our purposes, all those causations are going to hit 100 percent."

The plaintiff contends that that instruction clearly was an improper statement of the law and, therefore, failed to provide the jury with sufficient guidance in reaching the verdict. Viewing the charge as a whole, however, we conclude that there is no reasonable probability that the jury was confused or misled by that part of the court's instruction.

Our standard of review for claims of instructional error is well established. "[J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . . Our standard of review on this claim is whether it is reasonably probable that the jury was misled." (Internal quotation marks omitted.) *Sevigny* v. *Dibble Hollow Condominium Assn., Inc.*, 76 Conn. App. 306, 311, 819 A.2d 844 (2003). The test of a court's charge is not whether it is exhaustive, perfect or technically accurate, but whether it correctly adapts the law to the case in question, fairly presents the case to the jury in such a way that injustice is not done to either party and provides the jury with sufficient guidance in reaching a correct verdict. Id., 311–12; *Olshefski* v. *Stenner*, 26 Conn. App. 220, 223–24, 599 A.2d 749 (1991).

Within those particular parameters, we return to the plaintiff's claim. The plaintiff correctly notes that the court improperly indicated that the negligence of any individual may be considered when determining the percentage of the defendant's liability. Jury instructions, however, cannot be read in a vacuum. *Sevigny* v. *Dibble Hollow Condominium Assn., Inc.*, supra, 76 Conn. App. 311. Read as a whole, the charge properly

instructed the jury to consider the appropriate persons in making its apportionment determinations. The court repeatedly emphasized that the jurors were to determine the negligence of "the other parties, defendant driver and the pedestrian" without reference to any other individual.

Furthermore, the defendant asserts that even if the court improperly instructed the jury, the jury's conclusion, as shown by its answers to the interrogatories, makes any alleged improper instruction harmless. We agree.

The interrogatories completed by the jury reveal that it did not consider the negligence of a nonparty or settled person in apportioning the percentage of the defendant's negligence that proximately caused the plaintiff's injuries. The jury apportioned 100 percent of the fault between the plaintiff, the defendant Thomas Marino, Jr., who had been defaulted, and the defendants with whom the plaintiff had reached settlements in the action.[11] That is a clear indication that the jury was not, in fact, misled by the instruction at issue.

We conclude that the court's instructions provided the jury with sufficient guidance in reaching the correct verdict and, to the extent that they were at all improper, our review of the record convinces us that it is highly improbable that any impropriety had any effect on the verdict. As a consequence, the plaintiff's argument fails.

B

The plaintiff's final argument is that the court's charge was improper in that it permitted the jury to apportion liability without first examining the negligence of the defendant in violation of § 52-572h. We find that argument unavailing.

---

[11] See footnote 2.

As previously set forth, jury instructions must be read as a whole and must be considered from the standpoint of their effect on the jurors in guiding them to a proper verdict. *Sevigny* v. *Dibble Hollow Condominium Assn., Inc.*, supra, 76 Conn. App. 311. The determinative question is whether it is reasonably probable that the jury was misled. Id.

The plaintiff posits that the jury was misled and that it reached an improper verdict due to the following instruction regarding the apportionment of liability: "You can fill in [the interrogatories] any way you want. You can fill in the last line, the middle line, the top line; however you want to approach it, you can do that. You're not bound . . . to finish Gertrude Rivas first and DeMarkey as second and the others. You can do it in any manner you wish . . . ." We are not persuaded.

If read in isolation, the instruction could have the potential to mislead the jury. Our role, however, requires us to gauge each jury instruction in the context of the charge as a whole, rather than by individual component parts. *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 603, 662 A.2d 753 (1995). So viewed, we believe the jury had ample guidance to apportion accurately the defendant's liability and, thus, to reach a proper verdict.[12] In instances too numerous to catalog profitably here, the jury had previously received explicit instructions to determine the negligence of the defendant prior to that of the plaintiff, the defaulted parties or the settled persons in the case.

Moreover, our review of the record persuades us that it is improbable that the court's later instruction regarding the interrogatories had any effect on the ver-

---

[12] In fact, the charge the plaintiff identifies as improper does not seem so erroneous when read in its entirety. The court actually instructed the jurors to fill in the interrogatories in any manner they wanted to as long as they "compl[ied] with the concepts of law [the court] gave [them]."

dict. Subsequent to receiving the portion of the charge at issue, the court again impressed on the jury the need to first ascertain the liability of Rivas before assessing that of the other parties. Finally, the first two interrogatories provided by the court required that the jury examine the liability of the defendant only.[13] Once more, we conclude that the jury was properly guided in examining the defendant's fault. Viewed in its entirety, the court's instruction provided the jury with ample guidance with regard to the proper manner in which to apportion liability and, consequently, in reaching a proper verdict. As such, the plaintiff's claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] Those two interrogatories stated the following:

"Please answer yes or no to interrogatories 1 and 2.

"1. Was defendant Gertrude Rivas negligent in that she was inattentive and failed to maintain a proper lookout for pedestrians upon the roadway and did such negligence proximately cause injuries or damage to the plaintiff, Christopher DeMarkey?

"2. Was defendant Gertrude Rivas negligent in that she operated the vehicle driven by her at unreasonable rates of speed, given the conditions at hand in violation of Connecticut General Statute, section 14-218a and did such negligence proximately cause injuries or damage to the plaintiff, Christopher DeMarkey?

"If the answer to interrogatory no. 1 and 2 is no, defendant, Gertrude Rivas' apportionment of liability is zero, in interrogatory H."

In addition, we note that contrary to the plaintiff's assertion, the jury's unnecessary apportionment of all the parties' negligence does not belie a finding by this court that the jury understood the court's instruction that they first consider the negligence of the defendant.