JAMES E. SULLIVAN, ADMINISTRATOR (ESTATE OF JAMES P. SULLIVAN) *v.* METRO-NORTH COMMUTER RAILROAD COMPANY ET AL.
(SC 17739)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued December 4, 2008—officially released June 16, 2009

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellant (plaintiff).

*Robert C. E. Laney*, with whom, on the brief, were *Charles A. Deluca* and *Sarah F. DePanfilis*, for the appellee (named defendant).

*Ann Walsh Henderson* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Claudia A. Baio* and *Neha S. Parikh* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

VERTEFEUILLE, J. This certified appeal[1] arises from an action brought by the plaintiff, James E. Sullivan, as administrator of the estate of his deceased son, James P. Sullivan (decedent), against the named defendant,[2] Metro-North Commuter Railroad Company, for the wrongful death of the decedent resulting from the defendant's alleged negligence in failing to provide and maintain adequate security at one of its train stations.

---

[1] We granted the plaintiff's petition for certification to appeal from the Appellate Court limited to the following issues: (1) "Did the Appellate Court properly affirm the trial court's ruling precluding the expert testimony of John [W.] Kennish, an expert in premises security, on the ground that he had no experience, training or special knowledge relating to railroad security systems?"; and (2) "Did the Appellate Court properly affirm the trial court's jury instruction on superseding and intervening causes?" *Sullivan* v. *Metro-North Commuter Railroad Co.*, 280 Conn. 919, 919–20, 908 A.2d 545 (2006).

[2] The plaintiff's complaint also named the city of Norwalk, the redevelopment agency of the city of Norwalk and Ogden Allied Security Services, Inc., as defendants. Thereafter, summary judgment was rendered in favor of the city of Norwalk and the redevelopment agency of the city of Norwalk, and the plaintiff withdrew the claims alleged against Ogden Allied Security Services, Inc. We therefore refer in this opinion to Metro-North Commuter Railroad Company as the defendant.

On appeal, the plaintiff claims that the Appellate Court improperly affirmed the judgment of the trial court, which had rendered judgment in accordance with the jury's verdict in favor of the defendant. *Sullivan* v. *Metro-North Commuter Railroad Co.*, 96 Conn. App. 741, 901 A.2d 1258 (2006). Specifically, the plaintiff claims that the Appellate Court improperly concluded that: (1) the trial court properly excluded the testimony of the plaintiff's expert witness; and (2) the trial court properly instructed the jury on the superseding cause doctrine. We agree with the plaintiff that the Appellate Court improperly affirmed the trial court's exclusion of testimony by the plaintiff's expert witness, and that such preclusion was harmful. Accordingly, we reverse the judgment of the Appellate Court and remand the case for a new trial. We also address the merits of the plaintiff's second claim because it is likely to arise on retrial. See *Burns* v. *Hanson*, 249 Conn. 809, 830, 734 A.2d 964 (1999).

The Appellate Court opinion sets forth the procedural history of this case and the following facts, which the jury reasonably could have found. "On [an] evening [in] August [of] 1992, the decedent was shot and killed by Larone Hines in a stairway leading up from Monroe Street to the westbound platform of the South Norwalk train station. The station is located in a relatively high crime area of Norwalk. The city of Norwalk owns the two railroad station buildings at the South Norwalk station, a parking lot and an underground tunnel connecting the railroad station buildings. The state owns the railroad platforms and stairways leading up to the platforms from Monroe Street, including the stairway where the incident took place. The department of transportation has a service agreement with the Metropolitan Transportation Authority, the parent organization of the defendant, and the defendant for commuter rail service in Connecticut. Since 1983, the defendant has provided

this rail service and is responsible for its daily operations.

"On the night of the incident, the decedent was a passenger on one of the defendant's trains from Westport to Norwalk. He arrived at the station at approximately 10:39 p.m. After frequenting a few establishments in Norwalk, the decedent had a brief encounter with Hines and a group of men outside a local nightclub on Monroe Street. The encounter became increasingly hostile. When the decedent walked away, Hines and the group of men followed him underneath a railroad trestle where they again exchanged angry words. The decedent ran from the group and made his way to the stairway underneath the trestle where a physical altercation ensued, and then Hines shot him.

"The plaintiff filed a complaint alleging that the death of his decedent was a result of the defendant's failure to maintain and to provide adequate security at the station. The defendant raised several special defenses, including that the decedent's death was a result of the 'intentional and/or criminal actions of a third person' that superseded any possible negligence on the part of the defendant.

"The jury returned a verdict finding that the decedent was an invitee of the defendant and that his death was not foreseeable to the defendant. The court rendered judgment in favor of the defendant in accordance with the verdict." *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 96 Conn. App. 744–45. The plaintiff thereafter appealed from the trial court judgment to the Appellate Court, the majority of which affirmed the judgment of the trial court. Id., 743. The majority of the Appellate Court concluded that the trial court did not abuse its discretion when it precluded the testimony of the plaintiff's expert witness and that the trial court

properly instructed the jury on the superseding cause doctrine because that doctrine is still valid in Connecticut.[3] Id., 745, 751. This certified appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the Appellate Court improperly affirmed the trial court's exclusion of the testimony of his expert witness. Specifically, the plaintiff contends that the trial court abused its discretion when it precluded the testimony of John W. Kennish, a premises security expert, on the ground that he was not qualified to render properly supported expert testimony on railroad security, the precise issue before the court. In response, the defendant claims that the trial court properly acted within its broad discretion when it precluded the testimony of Kennish because it correctly determined that he was not qualified as an expert in railroad security. We agree with the plaintiff.

The following additional facts and procedural history are relevant to our resolution of this claim. Before trial,

[3] Judge Berdon dissented from the majority opinion of the Appellate Court. He noted that the trial court had focused on the issue of *railroad* security in deciding the admissibility of the expert testimony of John W. Kennish, and Judge Berdon considered this focus incorrect. *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 96 Conn. App. 755 n.1 (*Berdon, J.*, dissenting). Judge Berdon determined that Kennish had been offered as an expert on premises security, which was the relevant issue before the court. Id., 755. He also noted that the trial court considered Kennish's testimony according to the standard for scientific evidence and *not* nonscientific evidence, which was the proper standard. Id., 755 n.1. Relying on this proper standard, Judge Berdon concluded in his dissent that the trial court both abused its discretion and misconceived the law when it excluded Kennish's expert testimony. Id., 757. Judge Berdon also concluded that with regard to the second certified issue, the trial court improperly instructed the jury on the doctrine of superseding cause. Id. He determined that because the intervening and superseding cause in the present case was foreseeable given the high crime area, it should have been no surprise to the defendant. Id., 758. Accordingly, Judge Berdon concluded that application of the doctrine of superseding cause was improper under *Barry*. Id.

the plaintiff disclosed Kennish as his expert in premises security. Kennish has extensive education, training and experience in the area of premises security. He has two master's degrees, one in industrial security, and one in industrial safety, as well as a bachelor of science degree in criminal justice and sociology. He completed safety training at two different police academies, served as a police officer for a total of eight years in two different cities, and worked as a security specialist and director of security for two financial institutions for a total of fourteen years. Kennish has authored numerous publications concerning premises security issues, including, but not limited to, bank security, robbery prevention, employee crime, and general premises security litigation and advisory measures. He also has rendered advice and testified in a number of different premises security cases.

In his supplemental disclosure of this expert witness, the plaintiff asserted that in light of these qualifications, Kennish was expected to testify as to the lack of security at the South Norwalk train station, as well as to "those measures that the defendant could have and should have taken to protect the public . . . ." The plaintiff also intended to have Kennish testify that the fatal attack against the decedent was foreseeable given the overall lack of security at the train station as well as the high crime rate in the surrounding area. The defendant thereafter moved to preclude Kennish's testimony, claiming that Kennish was unqualified to render an expert opinion on the security of a railroad station. The trial court granted the defendant's motion, concluding that the matter specifically in issue was one of railroad security and not premises security. Because it found that Kennish "had no railroad experience, no involvement in railroad security, [and] that he was not a railroad expert, a railroad police procedure expert [or] a

railroad police security expert," the trial court precluded Kennish's testimony.

On appeal, the majority of the Appellate Court concluded that the trial court properly "determined that Kennish lacked the necessary qualifications to render an expert opinion for which his testimony was offered." *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 96 Conn. App. 747. The court identified the specific issue before the trial court as being whether the defendant negligently had failed to provide adequate railroad security, and thus concluded that because Kennish's expertise was in the field of premises security, and not railroad security, the trial court properly precluded his testimony. Id. The Appellate Court relied primarily on Kennish's testimony at his deposition, which revealed that he had police and premises security experience, but no experience, training or knowledge of railroad security. The court therefore concluded that the trial court had not abused its discretion in precluding Kennish's testimony.

We begin our review of this issue by setting forth the well established standard of review regarding a trial court's ruling on the admissibility of expert testimony. "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed." (Internal quotation marks omitted.) *Coughlin* v. *Anderson*, 270 Conn. 487, 514–15, 853 A.2d 460 (2004); see also *State* v. *Griffin*, 273 Conn. 266, 274–75, 869 A.2d 640 (2005); *Pestey* v. *Cushman*, 259 Conn. 345, 368–69, 788 A.2d 496 (2002); *Kenney* v. *Mystic Valley Hunt Club, Inc.*, 93 Conn. App. 368, 371, 889 A.2d 829 (2006). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut*

*Resources Recovery Authority*, 291 Conn. 433, 477, 970 A.2d 592 (2009). "Even if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary [impropriety], there also must be harm." *Farrell* v. *Bass*, 90 Conn. App. 804, 811, 879 A.2d 516 (2005), citing *Rokus* v. *Bridgeport*, 191 Conn. 62, 70, 463 A.2d 252 (1983).

This court recently articulated the test for the admission of expert testimony, which is deeply rooted in common law. "Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 629, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005); *Maher* v. *Quest Diagnostics, Inc.*, 269 Conn. 154, 167–68, 847 A.2d 978 (2004); see also Conn. Code Evid. § 7-2.[4] In other words, "[i]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) *State* v. *Douglas*, 203 Conn. 445, 452, 525 A.2d 101 (1987).

It is well settled that "[t]he true test of the admissibility of [expert] testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to

---

[4] Section 7-2 of the Connecticut Code of Evidence provides: "A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue."

the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue." (Internal quotation marks omitted.) *Going* v. *Pagani*, 172 Conn. 29, 35, 372 A.2d 516 (1976); *Schomer* v. *Shilepsky*, 169 Conn. 186, 191, 363 A.2d 128 (1975). "Implicit in this standard is the requirement . . . that the expert's knowledge or experience must be directly applicable to the matter specifically in issue. *Siladi* v. *McNamara*, 164 Conn. 510, 513–14, 325 A.2d 277 [1973]." *Going* v. *Pagani*, supra, 35; see also *State* v. *Douglas*, supra, 203 Conn. 453 ("in order to be admissible, the proferred expert's knowledge must be directly applicable to the matter specifically in issue").[5]

Resolution of the issue before us turns on whether the issue before the jury involved premises security generally or railroad security in particular. The plain-

[5] We acknowledge that there is a different standard of admissibility for scientific evidence under *State* v. *Porter*, 241 Conn. 57, 68–69, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). "In *Porter*, this court followed the United States Supreme Court's decision in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and held that scientific evidence should be subjected to a flexible test, with differing factors that are applied on a case-by-case basis, to determine the reliability of the scientific evidence." (Internal quotation marks omitted.) *Maher* v. *Quest Diagnostics, Inc.*, supra, 269 Conn. 168. "Following *State* v. *Porter*, supra, 81–84, scientific evidence, and expert testimony based thereon, usually is to be evaluated under a threshold admissibility standard assessing the reliability of the methodology underlying the evidence and whether the evidence at issue is, in fact, derived from and based upon that methodology . . . ." (Citation omitted; internal quotation marks omitted.) *Maher* v. *Quest Diagnostics, Inc.*, supra, 168.

Neither party in the present case contends that Kennish's testimony is based on scientific evidence and thus requires analysis under *Porter*. In its motion to preclude Kennish's testimony in the trial court, the defendant claimed that Kennish's opinion was inadmissible under § 7-2 of the Connecticut Code of Evidence, *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999), *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, supra, 509 U.S. 579, and *State* v. *Porter*, supra, 241 Conn. 57, "[b]ecause [it] is not based on reliable scientific methods . . . ." The defendant does not reassert this position in the present appeal.

tiff's decedent first encountered Hines and his companions on Monroe Street, a public street not far from the railroad station. Hines and the men followed the decedent as he ran to the stairway underneath the railroad trestle. There was a physical altercation on the stairway and Hines then shot the decedent on those stairs, which led up to the railroad platform. On these facts, we conclude that the jury was called upon to decide an issue of premises security in general. We see no distinction between security on a stairway that happens to lead to a railroad platform and security on any other public stairway in a high crime area. The stairwell in which the attack against the decedent occurred is open to and accessible by the public at all times. Although it provides access to the railroad platform, there is nothing about this stairway that is unique to railroads. The stairs simply connect the building and platforms to sidewalks and streets in the immediate vicinity of the railroad station. The fact that the stairway leads to a railroad platform is incidental to the issue of security in that stairwell. The matter at issue here had nothing to do with safety *specific* to railroads, such as boarding or deboarding a train or installation of safety signals along the tracks. See, e.g., *Maguire* v. *National Railroad Passenger Corp.*, United States District Court, Docket No. 99 C 3240, 2002 U.S. Dist. LEXIS 5226, *16 (N.D. Ill. March 28, 2002) (safety measures regarding boarding train are specific to railroad for purpose of admissibility of expert testimony). In other words, the negligence alleged by the plaintiff is *not* specific to railroad stations.

Kennish was offered as an expert in premises security, which includes general public safety.[6] His extensive

---

[6] Because the trial court incorrectly identified the matter at issue as railroad security, and not premises security, the trial court did not need to decide whether Kennish was qualified as an expert in premises security. Both parties, however, at various times, have admitted to Kennish's qualifications in at least some aspect of premises security.

police and bank security experience, his advanced safety and security education, and his technical training all constitute the type of special skills or knowledge that would have been helpful to the jury in the present case. See *Going* v. *Pagani*, supra, 172 Conn. 35. The jury had to determine whether appropriate security measures had been taken in the stairway where the decedent was followed and fatally shot, and whether his assault and death were foreseeable. Kennish's testimony would have assisted the jury in its consideration of the alleged security negligence on the part of the defendant. Accordingly, we conclude that the Appellate Court improperly affirmed the trial court's decision to preclude Kennish's expert testimony.

We next must determine whether the preclusion of Kennish's testimony was harmful. As we previously have stated herein, "[e]ven if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary [impropriety], there also must be harm." *Farrell* v. *Bass*, supra, 90 Conn. App. 811, citing *Rokus* v. *Bridgeport*, supra, 191 Conn. 70. "The harmless [impropriety] standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Internal quotation marks omitted.) *Kalams* v. *Giacchetto*, 268 Conn. 244, 249–50, 842 A.2d 1100 (2004); *Dinan* v. *Marchand*, 279 Conn. 558, 567, 903 A.2d 201 (2006). "Moreover, an evidentiary impropriety in a civil case is harmless only if we have a fair assurance that it did not affect the jury's verdict." (Internal quotation marks

omitted.) *Hayes* v. *Camel*, 283 Conn. 475, 489, 927 A.2d 880 (2007).[7]

"A determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial. *Vasquez* v. *Rocco*, 267 Conn. 59, 72, 836 A.2d 1158 (2003). Thus, our analysis includes a review of: (1) the relationship of the improper evidence to the central issues in the case, particularly as highlighted by the parties' summations; (2) whether the trial court took any measures, such as corrective instructions, that might mitigate the effect of the evidentiary impropriety; and (3) whether the improperly admitted evidence is merely cumulative of other validly admitted testimony. . . . *Prentice* v. *Dalco Electric, Inc.*, [280 Conn. 336, 358, 907 A.2d 1204 (2006), cert. denied, 549 U.S. 1266, 127 S. Ct. 1494, 167 L. Ed. 2d 230 (2007)]; see also id., 360–61 (noting that during summation, plaintiff described issue encompassing improperly admitted scientific evidence as critical and emphasized that evidence); *Hayes* v. *Caspers, Ltd.*, 90 Conn. App. 781, 800, 881 A.2d 428 (cautionary instruction addressed prejudicial impact of expert's testimony that included arguably improper discussion of pending federal action), cert. denied, 276 Conn. 915, 888 A.2d 84 (2005); *Raudat* v. *Leary*, 88 Conn. App. 44, 52–53, 868 A.2d 120 (2005) (improperly admitted expert

---

[7] "Inasmuch as neither party argues for a different harmless [impropriety] standard in civil cases than the well established [likely] would [have] affect[ed] the result standard recently applied in *Prentice* v. *Dalco Electric, Inc.*, [280 Conn. 336, 358, 907 A.2d 1204 (2006), cert. denied, 549 U.S. 1266, 127 S. Ct. 1494, 167 L. Ed. 2d 230 (2007)], and *Dinan* v. *Marchand*, supra, 279 Conn. 567, we apply that formulation in the present case, notwithstanding our recent adoption of a new workable standard for harmless [impropriety] review of erroneous evidentiary rulings in the context of criminal cases. *State* v. *Sawyer*, [279 Conn. 331, 354, 904 A.2d 101 (2006)]; see also id., 357 (improper evidentiary ruling is harmless in criminal case if reviewing court has fair assurance that it did not substantially affect jury's verdict . . .)." (Internal quotation marks omitted.) *Hayes* v. *Camel*, supra, 283 Conn. 489 n.16.

testimony was harmful error when it related to central issue in case, namely, condition of purchased horse); *DeMarkey* v. *Fratturo*, [80 Conn. App. 650, 656–57, 836 A.2d 1257 (2003)] (improperly admitted hearsay evidence about cause of motor vehicle accident was harmless because it was cumulative of properly admitted testimonial and diagram evidence). The overriding question is whether the trial court's improper ruling affected the jury's perception of the remaining evidence. *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990)." (Internal quotation marks omitted.) *Hayes* v. *Camel*, supra, 283 Conn. 489–90.

In the present case, the jury found that the fatal shooting of the decedent was not foreseeable; it therefore returned a verdict for the defendant. Interrogatory number three of the jury interrogatories asked the jury: "Do you find that the death of [the decedent] was foreseeable to [the defendant], as that term was defined for you?" Beneath this interrogatory was the direction: "If the answer is no, you must return a defendant's verdict. Please complete the defendant's verdict form." The jury, after answering this interrogatory in the negative, was thus directed to skip the subsequent interrogatories and immediately enter a verdict for the defendant. If the jury had answered the interrogatory in the affirmative, however, it would have been directed to answer questions regarding its determination of negligence. It is clear, then, that the issue of foreseeability was crucial to the plaintiff's case because it alone dictated the outcome of the case.

Here, the plaintiff's disclosure of Kennish as his expert witness stated that he would testify as to "issues of liability and foreseeability." His testimony was crucial, therefore, to the plaintiff's case in establishing the foreseeability of the attack on the decedent given the defendant's alleged negligence with regard to the security in and around the stairwell. See *Sullivan* v. *Metro-*

*North Commuter Railroad Co.*, supra, 96 Conn. App. 757 (*Berdon, J.*, dissenting); see also *Raudat v. Leary*, supra, 88 Conn. App. 52–53. Moreover, Kennish was the only expert proffered to testify on the issue of foreseeability; his testimony would thus not have been "cumulative of other validly admitted testimony." (Internal quotation marks omitted.) *Prentice v. Dalco Electric, Inc.*, supra, 280 Conn. 358. Finally, attorneys for both parties focused on the issue of foreseeability in their summations, highlighting the importance of its existence or lack thereof to the jury's determination of negligence. See id., 360–61. Without the aid of Kennish's testimony, and in accordance with the directions in the jury interrogatories, the jury rendered a verdict for the defendant. We thus conclude that the trial court's impropriety in precluding Kennish's expert testimony likely affected the result, and therefore was harmful. Accordingly, we reverse the judgment of the Appellate Court and direct that the case be remanded for a new trial.

II

Because of our conclusion that this case must be remanded for a new trial, it is appropriate for us to give guidance on issues that are likely to recur on retrial. See *Burns v. Hanson*, supra, 249 Conn. 830. We therefore will address the plaintiff's claim that the Appellate Court improperly affirmed the trial court's instruction to the jury on the superseding cause doctrine.[8] More specifically, the plaintiff asserts that use of the superseding cause doctrine was eliminated in negligence

---

[8] We disagree with the assertion by the concurrence that it is not necessary to address the second issue. We think it prudent to address the second issue because it is likely to arise on remand and, in such situations, it is proper "to provide guidance regarding one of the underlying issues of law that [the] case presents." *Abington Ltd. Partnership v. Heublein*, 246 Conn. 815, 827, 717 A.2d 1232 (1998).

cases by this court in *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 820 A.2d 258 (2003).

In response, the defendant asserts that, because in *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 439 n.16,[9] we made clear that we were *not* abolishing the doctrine of superseding cause in all civil cases, the Appellate Court properly affirmed the trial court's use of this doctrine in its jury instructions. The defendant contends that in *Barry*, we limited the use of the doctrine of superseding cause to cases like the present one that involve unforeseeable intentional torts and criminal acts. We agree with the defendant and the Appellate Court.

The following additional facts and procedural history, as set forth in the Appellate Court opinion, are relevant to our resolution of this claim. "At the conclusion of the trial, the [trial] court gave the following jury instruction relevant to this claim. 'One of the defenses of the defendant is that even if you were to find it negligent, which negligence it denies, the actions of [Hines] intervened to break the chain of causation between its alleged

[9] This court stated in *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 439 n.16: "Our conclusion that the doctrine of superseding cause no longer serves a useful purpose is limited to the situation in cases, such as the one presently before us, wherein a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence. *Our conclusion does not necessarily affect those cases where the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct.* See *Doe* v. *Manheimer*, 212 Conn. 748, 761, 563 A.2d 699 (1989) (concluding that criminal attack on plaintiff was superseding cause of plaintiff's injuries notwithstanding plaintiff's claim that defendant's allowed overgrowth of vegetation on property where attack occurred was substantial factor in both occurrence and duration of attack), overruled in part on other grounds, *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995). *Nor does our conclusion necessarily affect the doctrine of superseding cause in the area of criminal law.* See *State* v. *Munoz*, 233 Conn. 106, 124–25, 659 A.2d 683 (1995). We leave those questions to cases that squarely present them." (Emphasis added.)

negligence and [the decedent's] death. . . . [I]f you find that the actions of [Hines] intervened and superseded any negligence on the part of the defendant, then the defendant cannot be responsible to the plaintiff and your verdict must be for the defendant. If you find that [Hines'] intentional acts were not within the scope of the risk which may have been created by the defendant's conduct, then the actions of [Hines] may be found by you to be the proximate cause of the plaintiff's injuries relieving the defendant of liability even if you find that the defendant was negligent and their negligence created a situation which afforded an opportunity to [Hines] to commit the crime.' " *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 96 Conn. App. 751–52.

The majority of the Appellate Court concluded that the trial court properly instructed the jury on the doctrine of superseding cause. Id., 751. The Appellate Court closely examined our opinion in *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 424, and concluded that we "did indeed determine that the doctrine of superseding cause was to be abandoned in favor of a proximate cause analysis *in some circumstances.*" (Emphasis in original.) *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 96 Conn. App. 754. The Appellate Court disagreed with the plaintiff that in *Barry*, we "abolish[ed] the doctrine of superseding cause in all civil cases." Id. Instead, the court cited to *Barry* v. *Quality Steel Products, Inc.*, supra, 439 n.16, and noted that this court explicitly left room for continued application of the doctrine to situations, like the one in the present case, involving unforeseeable intentional acts or crimes. *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 754–55. The Appellate Court ultimately concluded that the trial court's jury instructions were "correct in law, appropriately adapted to the issues and sufficient to guide the jury." Id., 755. It therefore affirmed the judgment of the trial court. Id.

We agree with the Appellate Court majority's interpretation of *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 429 n.16, in which we addressed the viability of the doctrine of superseding cause and specifically limited our abolishment of the doctrine "to the situation in cases . . . wherein a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence." We made clear that "[o]ur conclusion does not necessarily affect those cases where the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct." Id.

The present case presents precisely this type of excepted situation. As the Appellate Court properly noted: "[T]he defendant . . . put forth as a special defense its theory that the criminal acts of a third party superseded any possible negligence on its part." *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 96 Conn. App. 755. Accordingly, we conclude that the Appellate Court properly affirmed the trial court's jury instruction on the doctrine of superseding cause.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for a new trial.

In this opinion ROGERS, C. J., and PALMER and ZARELLA, Js., concurred.

KATZ, J., concurring. I agree with and join the well reasoned majority opinion insofar as it determines that the Appellate Court improperly affirmed the trial court's exclusion of the testimony of John W. Kennish, the expert witness proffered by the plaintiff, James E. Sullivan as administrator of the estate of his deceased son. I disagree, however, with its decision to address the merits of the plaintiff's second claim that the Appellate

Court improperly affirmed the trial court's instruction to the jury on the superseding cause doctrine. In my view, it is both unnecessary and unwise to sanction this particular instruction in light of the facts of the present case.

In *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 439 n.16, 820 A.2d 258 (2003), we limited our conclusion "that the doctrine of superseding cause no longer serves a useful purpose . . . to the situation in cases . . . wherein a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence." Specifically, we explained that this conclusion did "not necessarily affect those cases where the defendant claims that an *unforeseeable* intentional tort, force of nature, or criminal event supersedes its tortious conduct. . . . Nor [did] our conclusion necessarily affect the doctrine of superseding cause in the area of criminal law. See *State* v. *Munoz*, 233 Conn. 106, 124–25, 659 A.2d 683 (1995)." (Citation omitted; emphasis added.) *Barry* v. *Quality Steel Products, Inc.*, supra, 439 n.16. The majority in this case concludes that "[t]he present case presents precisely this type of excepted situation." I agree.

The defendant in the present case, Metro-North Commuter Railroad Company, did assert as a special defense that the criminal acts of a third party superseded any possible negligence on its part. Because, however, the trial court incorrectly identified the matter at issue as *railroad* security, and not *premises* security, it excluded Kennish's testimony that the plaintiff had proffered to establish that the fatal attack against the plaintiff's decedent was foreseeable in light of the overall lack of security at the train station and the high crime rate in the surrounding area. As the majority correctly points out, Kennish was the only expert to testify on the issue of foreseeability. Therefore, the jury, charged with deciding whether appropriate security measures

had been taken in the stairway where the plaintiff's decedent was killed and whether his assault and death were foreseeable, never heard any expert testimony on that issue and, accordingly, found that the attack was not foreseeable.

At the new trial ordered as a result of the majority opinion in the present case, the jury presumably will hear testimony from Kennish and, thus, will have evidence as to the foreseeability of the attack to consider in its deliberations. Therefore, the trial court will have to provide new and appropriate jury instructions, instructions tailored to the evidence presented and the issues squarely before the jury. Although those instructions may well include instructions on the doctrine of superseding cause, the court necessarily will have to explain that the doctrine applies only when the intentional attack was unforeseeable. Although this court will address issues unnecessary to the resolution of an appeal when they are likely to arise on remand, there is no pressing need to do so in the present case. This court's decision in *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 435, 439 n.16, provides sufficiently clear guidance to the trial courts as to the parameters and application of the doctrine of superseding cause. Jury instructions should be tailored to the case at hand, and I see no need to put our imprimatur on any particular jury instruction as to that doctrine. Because, however, the majority has decided to sanction the particular instruction given in this case, it seems likely that the trial court simply will repeat this instruction in the new trial. Therefore, rather than approve the instructions previously given at trial, wherein the only expert evidence on foreseeability, the key issue pertaining to the special defense of superseding cause, was disallowed, I would simply reverse the judgment of the Appellate Court and remand the case for a new trial.

Accordingly, I respectfully concur.